*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS LEVI ALLEN, SR.,

        Defendant-Appellant.

UNPUBLISHED
October 24, 2019

No. 345931
Antrim Circuit Court
LC No. 2017-004858-FC

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration with a person under age 13), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person under age). The trial court sentenced defendant to serve concurrent terms of imprisonment of 25 to 50 years' for the CSC-I conviction and 6 to 15 years for each CSC-II conviction. Because defendant did not provide adequate factual support for his ineffective assistance of counsel claims, and because defendant has not established that any errors warrant reversal, we affirm.

## I. BACKGROUND

The complainant brought allegations of abuse against defendant, her grandfather. The complainant and her older sister testified they visited their grandparents' home during their father's parenting time every other weekend when they were growing up. The complainant's father, defendant's son, testified on behalf of defendant that he was present for most of these visits, but that he missed about 15 of 26 annual visits. Both sisters testified that their grandmother left every night to stay with her "friend" or her "boyfriend."

The complainant testified that defendant often offered her and her sister money or cigarettes or both to undress in front of him when the complainant was between 7 and 10 years old, and that the sisters did so. The complainant stated that defendant once touched her chest while she undressed in front of him. The complainant further testified that defendant rubbed her vagina under her clothing several times and that defendant once put his finger inside her vagina

-1-

when she was eight or nine years old. She testified that the abuse continued over the course of a "couple years."

The complainant's sister, however, testified that defendant offered them cigarettes to show him their breasts only once and that the sisters did not do so, and denied that defendant ever touched her inappropriately. The complainant's sister stopped visiting her grandparents when she was 16 years old. She did not feel safe at their home because defendant made sexual comments about women's appearances that made her uncomfortable. The complainant's sister was worried about leaving the complainant alone with defendant and told the complainant that defendant made her uncomfortable, but the complainant continued to visit defendant's home alone. The complainant's visits ended when she was 16 years old and disclosed the abuse to her father. The complainant admitted that she spoke with Michigan State Police Sergeant Mike Bush about allegations of abuse against her father, but she told Sergeant Bush that she had dreamed about these allegations and was not certain that they occurred, in contrast with her certainty that defendant had abused her. The complainant stated that she had the dreams about the allegations against her father after writing her trauma story while in treatment and that medical staff had required her to discuss the allegations with the police.

Teresa Lutke, a former CPS investigator, testified that she conducted a forensic interview with the complainant about the allegations of sexual abuse against defendant. On cross-examination, Lutke agreed that she could not guarantee the accuracy or veracity of the complainant's statements. Detective Sergeant James Janisse of the Antrim County Sheriff's Department, the officer in charge of the investigation, confirmed that he was present for the interview.

The jury found defendant guilty of one count of CSC-I and two counts of CSC-II as charged.

Defendant filed motions for a new trial and for a *Ginther*[1] hearing, supported by affidavits from the complainant's father and the complainant's grandmother arguing that trial counsel was ineffective for the following: failing to introduce evidence of prior false allegations made by the complainant against her father, two of her mother's boyfriends, and a minister; failing to arrange for defendant to have a polygraph examination that defendant requested; failing to meet with and prepare defendant adequately for trial and for depriving him of the opportunity to make an informed decision about whether to testify; failing to interview and prepare witnesses for trial; and, failing to consult an expert witness regarding the complainant's memory. The trial court denied defendant's requests for an evidentiary hearing and for a new trial.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## II. DISCUSSION

## A. EXPERT WITNESS

Defendant first argues that trial counsel was ineffective for failing to consult an expert witness regarding the complainant's inability to distinguish between dreams and reality. An ineffective assistance of counsel claim presents a mixed question of constitutional law and fact. *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "When no *Ginther* hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

"Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). To warrant relief on an ineffective assistance of counsel claim, "a defendant must show that his trial counsel's conduct fell below an objective standard of reasonableness and was prejudicial, thereby denying the defendant a fair trial." *People v Wilson*, 242 Mich App 350, 354; 619 NW2d 413 (2000). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel . . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). For trial counsel's decisions to constitute sound trial strategy, trial counsel must have reasonably investigated the matter or reasonably decided that certain investigations were unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). However, "[a] failed strategy does not constitute deficient performance." *Petri*, 279 Mich App at 412.

"Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). "A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "Absent any evidence regarding the extent of trial counsel's pretrial investigation" into potential witness testimony, a defendant has not established the factual predicate of an ineffective assistance of counsel claim asserting inadequate witness preparation. *Carbin*, 463 Mich at 601. And, when a defendant has produced no proof that an expert witness would testify in his favor, he has not established the factual predicate for an ineffective assistance of counsel claim. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

Initially, we note that defendant has not identified what type of expert witness should have been consulted or presented at trial. On appeal, defendant refers to an expert on delayed reporting, while defendant referred to an expert on pattern or learned memories in the trial court.

Additionally, defendant did not produce an affidavit describing an expert witness's opinion and how the consultation of an expert would have made the proceeding more reliable. Therefore, defendant has not provided adequate factual support for his claim that trial counsel was ineffective for failing to consult an expert witness.

Defense counsel first raised the issue of dreams versus actual events when he cross-examined the complainant. Counsel asked the complainant about prior reports she had made containing similar accusations against her father, accusations that she later claimed she had dreamed of. This line of questioning shows that defense counsel had investigated the case and was aware that the complainant had previously drawn a distinction between her dreams and reality. Defense counsel then argued in closing that the complainant was not credible, stating in part that she confused dreams for reality. In the absence of evidence from an expert witness to support defendant's post-conviction claims, defendant has not shown that trial counsel was ineffective for failing to consult an expert witness on the amorphous topic of the complainant's perception of dreams compared to reality when trial counsel presented this reason to the jury as a basis for rejecting the complainant's testimony.

Defendant minimally raises additional arguments in his claim that counsel should have consulted or retained an expert, most of which are actually related to expert testimony, and none of which have merit. For example, defendant argues that the complainant's counseling records show a history of false allegations and substantiated her confusion of dreams and reality. However, the counseling records contain no such information. One record from August 2013 refers to reports of physical abuse and neglect by the complainant's mother and the complainant's mother's boyfriend. Another report from 2002, when the complainant was two years old, found no evidence to show that the complainant was sexually abused when she told her father that her "butt hurt" after spending time with her mother and her mother's boyfriend, who admitted that he sometimes spanked the complainant. Further, the complainant testified at trial that the police investigation into allegations of abuse against her father came out of the trauma story she wrote as part of her counseling at a mental hospital, showing that the investigation was the result of the hospital's duty to report allegations of sexual abuse, MCL 722.623, rather than a deliberately false and manipulative allegation the complainant made against her father.

Defendant also argues that trial counsel was ineffective for failing to highlight the discrepancies among various statements the complainant made. Contrary to defendant's criticisms of defense counsel's performance, trial counsel did highlight the weaknesses in the complainant's testimony, including inconsistent statements, but the jury decided that she was credible. Evaluating witness credibility is a task for the jury. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Moreover, trial counsel highlighted inconsistencies between the complainant's testimony and her sister's testimony to argue that the complainant was not credible because it was not possible to believe both sisters' testimony. Trial counsel also argued that the complainant's admission that she did not remember statements she made to Lutke showed that the complainant had "a memory problem." Although trial counsel's arguments ultimately failed, his arguments (that the complainant was not credible) were grounded in the evidence. Defendant has not established that expert testimony would have affected the jury's decision to credit the complainant's testimony.

Defendant finally contends that trial counsel's failure to consult an expert precluded him from arguing that the complainant was not credible and that this deficiency undermined confidence in the verdict because the only evidence of penetration came from the complainant's hearsay statements to Lutke and Sergeant Bush regarding details that the complainant did not remember. Defendant is incorrect because the complainant testified independently, without having her memory refreshed, that defendant put his finger inside her vagina. She also testified that defendant touched her chest and rubbed her vagina. Defendant has not established entitlement to relief based on his arguments.

### B. THE COMPLAINANT'S OUT-OF-COURT STATEMENTS

Defendant argues that the prosecution improperly introduced hearsay testimony through questions about statements the complainant made to Lutke and Sergeant Bush to bolster the complainant's credibility. Although we agree that some of this testimony was inadmissible, we discern no error warranting reversal. We review this unpreserved evidentiary issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To establish plain error, "the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *Putman*, 309 Mich App at 243.

Our Supreme Court has held that the introduction of hearsay statements to corroborate allegations of sexual abuse was prejudicial when it "left the jury with a much fuller, clearer, and more inculpatory account of the alleged [sexual abuse] than that which was properly admitted through [the complainant] and corroborated by" her mother. *People v Douglas*, 496 Mich 557, 561-563, 582; 852 NW2d 587 (2014). In *People v Musser*, 494 Mich 337, 350-351, 353-354; 835 NW2d 319 (2013), statements made by detectives that vouched for the child complainant's credibility during their interrogation of the defendant were deemed not relevant to providing context to the detectives' questions and the defendant's answers about the allegations of sexual misconduct, and should have been excluded. In addition, the detectives' statements vouching for the complainant's credibility were unfairly prejudicial because of "the undue weight that jurors may be inclined to place on police officers' statements . . . ." *Id*. at 363. The admission of this testimony also undermined the reliability of the verdict because this testimony invaded the jury's role of assessing witness credibility. *Id*. at 363-364. Similarly, in *Shaw*, 315 Mich App at 673-678, hearsay statements by three of the complainant's family members, a pediatrician, and a detective, that the complainant had been sexually abused were inadmissible, and defense counsel's failure to object to their admission was prejudicial because of "the frequency, extent, and force of the hearsay testimony . . . ."

Unlike *Douglas*, *Musser*, and *Shaw*, Lutke and Detective Sergeant Janisse in this case did not testify about the substance of the complainant's allegations, only the fact of the forensic interview conducted by Lutke and observed by Detective Janisse. The only hearsay statements came from the complainant herself, and her admission that she only remembered making the statements but not the events themselves detracted from the substance of the statements by introducing additional uncertainty about the reliability of the statements. The prosecution presumably sought to introduce evidence of these statements through the complainant's

testimony to create a fuller picture of the sexual abuse, but the complainant's qualification about her memory carried the risk of undermining her credibility. Trial counsel seized upon this admission to support his closing argument that Sarah's testimony was not credible. Only the jury can determine credibility, and a witness may not testify that a complainant was credible. *Musser*, 494 Mich at 348-349. No witness or expert testified that the complainant was credible, and the jury performed its task of assessing the complainant's credibility after watching and hearing her testify.

Defendant argues that the statements the complainant made to Lutke at the forensic interview were not admissible under MRE 803A or MCL 768.27c. Defendant is correct, but this argument is irrelevant because the prosecution did not seek to offer these statements under MRE 803A or MCL 768.27c. There is no dispute that the complainant's testimony about statements she made to Lutke at the forensic interview about details surrounding the sexual abuse was hearsay and that the prosecution intended to use those statements to introduce details about the sexual conduct. The prosecution introduced this evidence through a writing used to refresh the complainant's memory under MRE 612(a). When a witness's memory is refreshed using recorded material, the witness's recollection is the substantive evidence, and the recorded material is not evidence. *People v Favors*, 121 Mich App 98, 109; 328 NW2d 585 (1982). Consequently, the introduction of the statements the complainant made to Lutke through the complainant's testimony as a refreshed memory was improper because the complainant did not remember the events described after reading the forensic interview notes.

Regarding the complainant's testimony about the statements she made to Sergeant Bush, the prosecution asked the complainant about these statements on redirect in response to defense counsel's cross-examination of the complainant on the subject of her dreams and allegations against her father. The complainant confirmed that she told Sergeant Bush that she was not certain about the allegations against her father, but that she was certain about the allegations against defendant. Testimony elicited on redirect examination "to rebut the defense's insinuation" is relevant. *Ackerman*, 257 Mich App at 447-448. "A defendant has waived the issue if the record on appeal does not support the defendant's assignments of error." *Petri*, 279 Mich App at 410. Trial counsel began the line of questioning that raised the complainant's statements to Sergeant Bush for the purpose of arguing that the complainant was not credible. Defendant's evidentiary challenge to this testimony fails because it originated in defendant's questioning of the complainant.

Additionally, the plain error standard of review of the evidentiary question requires a showing of prejudice. Trial counsel used the complainant's statements to Lutke and Sergeant Bush to defendant's advantage by arguing that they undermined the complainant's credibility in conjunction with several other factors that undermined her credibility. Trial counsel noted the following: the absence of medical evidence; inconsistencies between the sisters' testimony, particularly the complainant's sister's testimony that she never undressed in front of defendant and that defendant never touched her inappropriately; the complainant's "memory problem" as illustrated by her admission that she remembered making statements to Lutke but did not remember the events themselves; the complainant's confusion between dreams and reality; the complainant's father's testimony that she could not be trusted because she mixes up facts when she tells stories; and, the lengthy delay in reporting. Trial counsel's strategy focused on challenging the complainant's credibility, and leaving these evidentiary questions unchallenged

gave him additional ammunition to employ in executing that strategy. Defendant has not established that the jury would have discredited the complainant's testimony if her statements to Lutke and Sergeant Bush had been excluded, particularly when that evidence constituted only a fraction of the testimony elicited. To the extent that defendant argues that trial counsel was ineffective for failing to object to the admission of those statements, trial counsel's closing argument, although unsuccessful, showed that he had a valid strategic reason to leave that testimony unchallenged.

## C. LUTKE'S TESTIMONY

Defendant argues that Lutke's testimony was not relevant and that it was unduly prejudicial because she vouched for the complainant's credibility. Although parts of Lutke's testimony were irrelevant, we disagree that the admission of her testimony warrants reversal. We review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Relevant evidence is generally admissible. MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence is relevant if it is material and has probative value. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). Materiality asks whether the evidence relates to a consequential fact. *Id*. at 388-389. Whether the evidence is probative depends on whether it tends to make a consequential fact more or less probable. *Id*. at 389-390.

Evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. "Evidence presents the danger of unfair prejudice when it threatens the fundamental goals of MRE 403: accuracy and fairness." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). "Evidence is not unfairly prejudicial under MRE 403 merely because it damages a party's case. Rather, undue prejudice refers to an undue tendency to move the tribunal to decide on an improper basis." *People v Buie (On Remand)*, 298 Mich App 50, 73; 825 NW2d 361 (2012) (quotation marks and citation omitted). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich App at 398.

To support this argument, defendant relies on *Musser*, 494 Mich at 353-354, in which our Supreme Court held that hearsay statements made by detectives vouching for the complainant's credibility should have been excluded from the questions and answers introduced from their interrogation of the defendant because those statements were not relevant to providing context to the defendant's answers during the interrogation and were unfairly prejudicial. For example, the detectives told the defendant that children do not typically lie about sexual abuse and do not like to talk to strangers about it and that they believed the complainant. *Id*. at 343-345. In contrast, defendant's argument in this case has no merit not only because Lutke's testimony about the fact of the forensic interview was relevant, but because Lutke did not vouch for the complainant's credibility.

Lutke testified that she came into contact with the complainant when Lutke was assigned to investigate allegations of criminal sexual conduct, that she subsequently interviewed the complainant using a forensic interview protocol, which she described in detail, and that the complainant was removed from her parents' care and placed in foster care. Lutke's testimony was relevant because the investigation, including the facts of the forensic interview and the result of the investigation, made it more probable that the complainant was the victim of criminal sexual conduct. Further, while Lutke testified that the purpose and structure of a forensic interview was to obtain reliable information and to avoid suggesting answers, she did not testify that she found the complainant credible. On cross-examination, defense counsel elicited from Lutke testimony that she could not "guarantee the accuracy or the veracity of [a child's] statements" during an interview and that Lutke could not confirm the truth of the complainant's statements. Although the purpose of Lutke's testimony was to corroborate the complainant's claim, Lutke did not vouch for the complainant's credibility and defense counsel addressed the potential for improper vouching by forcing Lutke to say that it was not possible to know if a child was telling the truth at a forensic interview. Therefore, Lutke's testimony about the fact of the interview was admissible because it was relevant and not unduly prejudicial, and defendant has not explained how the exclusion of any irrelevant testimony would have affected the outcome of the proceeding.

## IV. CUMULATIVE ERRORS

Defendant raises several claims of error to argue that trial counsel's inadequate trial preparation deprived him of a defense and denied defendant due process and a fair trial.[2] "The cumulative effect of several minor errors may warrant reversal where the individual errors would not." *Ackerman*, 257 Mich App at 454. "When no *Ginther* hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *Mack*, 265 Mich App at 125.

---

[2] In the issue presented, defendant refers to the Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment. The substance of defendant's argument, however, refers only to ineffective assistance of counsel on the basis of inadequate trial preparation and the inadequate presentation of witnesses, and defendant attributes the errors to trial counsel's deficient performance. Defendant did not otherwise mention or present argument about the constitutional guarantees raised in the question presented and the issue presented. "Failure to brief an issue on appeal constitutes abandonment." *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Because defendant argued this issue solely in the context of ineffective assistance of counsel without reference to the other constitutional guarantees, we limit our discussion of this issue to ineffective assistance of counsel.

Defendant contends that trial counsel failed to interview or prepare for trial any of the witnesses identified in voir dire. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that could have affected the outcome of the trial." *Putman*, 309 Mich App at 248. A defendant's ineffective assistance of counsel claim premised on the failure to call or investigate certain witnesses is meritless when the defendant does not produce affidavits describing testimony that would have been elicited from those witnesses or shows how proposed witness testimony would have benefited the defense. *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002).

The prosecution agreed that defendant supplied it with a copy of a witness list, even though defendant's witness list was not filed in the trial court, and defendant identified several potential witnesses during voir dire for the purpose of eliminating jurors who knew any of the potential witnesses. The only witness defendant called at trial was defendant's son, who testified that the complainant told stories and sometimes mixed up facts. In support of the motions for a new trial and for a *Ginther* hearing, defendant's wife and son stated that trial counsel met with all of the witnesses for only 15 minutes and did not interview them, except to ask defendant's wife about an affair that she denied. The post-conviction pleadings contain no discussion of which witnesses trial counsel should called to testify and what they would have testified about. In the absence of any description of these proposed witnesses' testimony, defendant has not demonstrated that trial counsel was ineffective for failing to call any of the potential witnesses identified or for only calling defendant's son as a witness.

Defendant also asserts that trial counsel's strategy was deficient for the following reasons: because he did not question defendant's son about false allegations that the complainant made against him; because he "did not impeach [the complainant] with prior inconsistent statements, the impossibility of her timeline, [the complainant's sister's] contrary testimony, [the complainant's] history of false reporting[,] and her use of accusations to manipulate adults and change her environment"; because he did not introduce evidence from or investigate "psychiatric reports expressing serious doubts on the matter of [the complainant's] reporting history"; because he did not introduce evidence that the complainant told counselors in 2013 that she had not been sexually abused; because he did not consult an expert witness; and, because he did not introduce evidence of prior false allegations of sexual abuse. "[D]ecisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *Putman*, 309 Mich App at 248. Moreover, defendant has provided no factual support for any of these claims of error.

By the time trial counsel called defendant's son as a witness, trial counsel had cross-examined the complainant about allegations made against her father when she raised suspicions about her father on the basis of a dream she had and whether she confused dreams for reality. In addition, trial counsel elicited from the complainant's father his opinion that she does not tell the truth. Defendant does not identify what prior inconsistent statements the complainant made that should have been used to impeach her testimony or how the timeline of events she described was impossible. In closing, trial counsel argued that the testimony of the sisters was so inconsistent

that the jury could not believe both of them, in addition to arguing that other factors counseled against crediting the complainant's testimony. As previously discussed, the counseling records attached to defendant's post-conviction motions do not substantiate defendant's claims about the complainant's prior false allegations and her use of false allegations to manipulate others and change her custodial environment. Defendant has not established the significance of the absence of allegations of sexual abuse against defendant in the 2013 records, which referred only to allegations of physical abuse by the complainant's mother and the complainant's mother's boyfriend. The absence of these allegations is hardly probative in light of the complainant's admittedly delayed reporting and her acknowledged history in foster care. We also reject defendant's claim regarding trial counsel's failure to consult because defendant failed to produce a description of an expert witness's opinion.

Part of trial counsel's strategy was to challenge the persuasive value of the prosecution's evidence and to argue that the prosecution did not meet its burden of proving guilt beyond a reasonable doubt. Introducing more evidence could have filled some of the gaps in the prosecution's evidence, such as how the investigation into the charges against defendant began or the reason for the delayed reporting, and made the complainant appear more credible by giving greater substance to her testimony. Although unsuccessful, trial counsel's strategy was to argue that the complainant was not credible by pointing out the holes in the prosecution's evidence.

As other purported examples of ineffective assistance, defendant additionally argues that he did not have a polygraph examination as requested. But the results of a polygraph examination are "not admissible at trial . . . ." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Defendant also argues that trial counsel only met with him "twice for five minutes and not at all prior to trial," and that he was not properly prepared for trial or advised about whether he should testify. However, defendant acknowledged on the record that he and counsel discussed his decision not to testify, and that he decided not to testify, and has not explained how more time with counsel would have altered the trial in any way. Defendant did not produce an affidavit in support of his motions for a new trial or for a *Ginther* hearing stating this claim or what he would have testified about, so even the barest evidence in support of this claim is not present in the record.

In sum, defendant provided scant factual support to substantiate his claims of error. Consequently, he has not established that cumulative errors warranted a new trial.

We affirm.


/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause